UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EDWARD CARPANELLI, et al.,

                Plaintiff(s)
   v.

AMERICAN STANDARD
COMPANIES INC., et al.,

                Defendant(s).
_____/

No. C 06-0004 WDB

ORDER GRANTING PLAINTIFFS'
MOTION TO REMAND ACTION TO
STATE COURT

Coordinated Proceedings Special Title
(Cal. Rule 1550(b))

  BATHROOM FITTINGS CASES  /

I.    Introduction

This is a coordinated antitrust case brought pursuant to California antitrust and unfair business practices statutes. Plaintiffs are indirect purchasers of plumbing products. Their Consolidated Amended Complaint alleges, on their own behalf and on behalf of a class of similarly situated indirect purchasers, that defendants American Standard and Masco (and unnamed co-conspirators) have formed an illegal trust or combination to fix, elevate, or maintain the price levels of plumbing fittings and plumbing fixtures.

1

On January 3, 2006, defendant American Standard[1] removed plaintiffs' coordinated class action to our Court. On January 11, 2006, plaintiffs filed a motion to remand the case to state court. The only issue truly disputed by the parties is whether the case was properly removed under the recently enacted Class Action Fairness Act.

II.   Background

In February of 2005, five separate plaintiffs filed putative class actions in California state court. Each of these complaints asserts a cause of action for violation of the Cartwright Act (California's antitrust statute) and a cause of action for violations of the California Unfair Competition Law (Bus. & Prof. Code § 17200, et. seq.)

Four of the five complaints -- *Lang*, *Young*, *Linn*, and *Barry*[2] -- accused defendants American Standard and Masco, in addition to other manufacturers, of conspiring to illegally fix, elevate, or maintain[3] the price levels of plumbing fittings. The fifth complaint, *Ed Carpanelli v. American Standard Companies Inc., et al.*,[4] also accused defendants of engaging in a price fixing conspiracy. The *Carpanelli* complaint is different from the other four complaints, however, in that *Carpanelli* identified both plumbing fittings and plumbing fixtures as the products that were the subject of defendants' alleged conspiracy.

---

[1] Defendant Masco did not join in the removal, nor did it file papers in opposition to plaintiffs' motion to remand. Accordingly, when we reference arguments or concessions made by 'defendant', we refer only to defendant American Standard.

[2] *Lawrence Lang v. American Standard Companies, Inc.*, San Francisco Superior Court Case No. 05-438604, filed February 14, 2005; *Scott Young v. American Standard Companies*, San Francisco Superior Court Case No. 05-438654, filed February 14, 2005; *Aaron Linn v. American Standard Companies*, San Francisco Superior Court Case No. 05-438776, filed February 17, 2005; *Judith Barry v. American Standard Companies*, San Francisco Superior Court Case No. 05-438787, filed February 17, 2005.

[3] From this point forward, we use the terms 'price-fixing' or 'fix prices' as shorthand for plaintiffs' allegation that defendants formed an illegal trust or combination to 'fix, raise, elevate, or maintain the prices levels of' the relevant products.

[4] Los Angeles Superior Court Case No. BC328849, filed February 15, 2005.

The last two complaints to be filed, *Linn* and *Barry*, were filed on February 17, 2005 - one day before the Class Action Fairness Act went into effect. The Class Action Fairness Act ("CAFA") amends federal diversity jurisdiction and related removal statutes to create federal jurisdiction over interstate class actions. Under CAFA, defendants may remove to federal court any action in which the plaintiff class exceeds more than 100 members, the parties are minimally diverse, and the aggregate amount in controversy exceeds five million dollars.

Approximately four months after plaintiffs filed their five individual lawsuits, on June 21, 2005, the Judicial Council of California determined that the cases should be coordinated pursuant to California Code of Civil Procedure section 404 et seq. and rules 1520 et seq. of the California Rules of Court. See Exhibit H to Defendant's Notice of Removal. Defendants did not challenge the decision by the Judicial Council to coordinate these cases.[5]

On July 7, 2005, the Presiding Judge of the San Francisco Superior Court assigned the Honorable Richard A. Kramer to sit as coordination trial judge to hear and determine the coordinated actions. Exhibit I to Defendant's Notice of Removal. On October 18, 2005, Judge Kramer issued his First PreTrial Order. This Order apportions duties and responsibilities among plaintiffs' various attorneys, and designates certain firms to serve as plaintiffs' co-liason counsel. Exhibit J to Defendant's Notice of Removal. Also on October 18, 2005, Jude Kramer issued a separate order instructing "those plaintiffs filing a Consolidated Amended Complaint" to do so by December 1, 2005. The Order also sets forth a deadline by which defendants must file an answer or a demurrer to the Consolidated Amended Complaint. Exhibit K to Defendant's Notice of Removal.

---

[5] Because it was not completely clear from the parties' written submissions whether defendants had challenged the Judicial Council's coordination decision, the Court asked defense counsel at the February 28, 2006, hearing whether defendants had made such a challenge. Defense counsel stated that defendants had <u>not</u> challenged the Judicial Council's coordination of plaintiffs' cases.

3

1    In response to Judge Kramer's second October 18, 2005, Order, on December 6, 2005, four of the five plaintiffs[6] filed a Consolidated Amended Complaint (hereinafter "CAC").

Plaintiffs' CAC clearly alleges that defendants American Standard and Masco conspired to fix prices as to both plumbing fittings and plumbing fixtures. The CAC also (i) removes Grohe America and Delta Faucet as defendants, (ii) divides the plaintiff class into two sub-classes, (iii) expands the class period to include plaintiffs who purchased plumbing products through the date of the filing of the CAC, and (iv) otherwise 'refines and harmonizes' the four individual Complaints.

Defendants did not attempt to challenge the CAC in state court -- they did not file a demurrer or any other kind of motion taking the position that the California court had erred under California law in permitting the plaintiffs to file a consolidated complaint.[7]

Instead of challenging the filing of the CAC in state court, on January 3, 2006, defendants filed a notice of removal in this court.

II.    Propriety of Removal Under Class Action Fairness Act

Defendant removed this case to federal court on the premise that plaintiffs' CAC commenced a 'new action' under California law. Plaintiffs dispute this premise -- arguing that their CAC 'relates back' to the filing of the four original complaints and therefore did not constitute a new action removable under CAFA. The validity of defendant's premise is dispositive of the outcome of plaintiffs' motion -- that is, if plaintiffs' CAC constitutes a new action, it follows that the case was properly removed under CAFA. If plaintiffs' CAC instead 'relates back' to the dates on which the original complaints were filed (just prior to the enactment of CAFA), then the CAFA does not apply and the case was improperly removed.[8]

---

[6] Plaintiff Judith Barry is not included in the CAC.

[7] This information was also solicited from defense counsel at the February 28, 2006, hearing.

[8] In their papers, the parties spend considerable energy arguing about whether the strong presumption against removal jurisdiction that traditionally exists applies to cases removed under the CAFA. Because it is not necessary to the resolution of plaintiffs' motion to decide this issue, we decline

The parties essentially agree on the standard governing the question of whether plaintiffs' CAC commenced a new action:

> CAFA's amendments to the federal diversity jurisdiction and removal statutes 'apply to any civil action commenced on or after' the date of CAFA's enactment, February 18, 2005. Although the statute itself does not define the term 'commenced', the Ninth Circuit has held that 'CAFA's commenced' language surely refers to when the action was originally commenced in state court.' Bush v. Cheaptickets, Inc., 425 F.3d 683, 686 (9th Cir. 2005). 'A state's own laws and rules of procedure determine when a dispute may be deemed a cognizable legal action in state court.'
>
> Under California law, a civil action is 'commenced by filing a complaint with the court.' California's 'relation back' rules likewise determine whether an amended complaint commences a new action on the date of its filing, or whether the amended complaint is deemed to relate back to the filing date of the original complaint. Id.
>
> Under California law, an amended complaint relates back to the filing date of the initial complaint when: (1) the amended complaint involves the same general set of facts as the original; (2) it seeks relief for the same injuries as the original; and (3) it refers to the same instrumentality as the original. An amendment that merely 'corrects a misnomer' generally will satisfy these criteria, whereas one that 'substantively changes the nature of the action' will not.

Defendant's Opposition, pp. 7, 8 (some citations omitted).

The parties disagree as to whether the CAC 'substantively' altered the nature of the actions. Defendant's primary argument[9] is that plaintiffs' initial complaints alleged that the defendants were engaged in a conspiracy to fix the prices of only bathroom (and kitchen) fittings. The CAC, by contrast, charges that the defendants were engaged in a conspiracy to fix the prices of bathroom fittings **and** bathroom fixtures.

---

to do so.

[9] Defendant also argues that plaintiffs' expansion of the class period to include the time from the filing of the initial complaints to the filing of the CAC is a substantive change (in other words, instead of the relevant class period being, for instance, February 1, 2001, to February 15, 2005, it is now February 1, 2001 to December 6, 2005). We are not persuaded that a lengthening of the class period by approximately ten months constitutes a 'substantive change' in the nature of plaintiffs' lawsuits.

5

Defendant emphasizes that the terms 'fittings' and 'fixtures' describe two very different types of products -- fittings are defined in the CAC as the "metal trim components that are used in conjunction with Plumbing Fixtures, such as faucets, showerheads, taps, mixers, handles, heaters, valves, and drains."  CAC, ¶ 5.  Fixtures, in contrast, are defined as "the fixed receptacles that receive water at the point of use, such as sinks, lavatories, toilet bowls, toilet tanks, and non-whirlpool bathtubs."  CAC, ¶ 4.

Defendant argues that the expansion of the alleged price-fixing conspiracy to include fixtures as well as fittings substantively alters the nature of the action.  Defendant points out that, in addition to changing the product definition, this change also expands the plaintiff class and by definition expands the agreements upon which the alleged conspiracy must have been based.  In addition, defendant points out that two of the defendants named in most of plaintiffs' original complaints (Grohe America and Delta Faucet) were dropped from the CAC - allegedly because they manufacture fittings but not fixtures.

Plaintiffs (at least in their moving papers) appear to argue that all four of the initial complaints included sufficient references to plumbing fixtures to adequately place defendants on notice that fittings and fixtures were included within the scope of the alleged conspiracy.

To resolve the parties' dispute, we turn to the source of that dispute - the original four complaints.  After carefully reviewing the complaints, we have reached the conclusion that both parties are overreaching.  Despite plaintiffs' assertions to the contrary, we believe that three of the four complaints -- *Lang*, *Young*, and *Linn* - did <u>not</u> put defendants on notice that the scope of the alleged conspiracy included plumbing fixtures as well as plumbing fittings.  Fixtures are not included in the product definitions, nor in the class definitions.  In fact, the only explicit reference to fixtures in these complaints is in their respective sections describing defendants' business enterprises.  Moreover, we must reject the notion that tacking the term 'and related products' onto a list of plumbing fittings <u>implicitly</u> suggested that the target products included plumbing fixtures as well as plumbing fittings.  In sum, we believe that the description of defendants' respective business enterprises as including plumbing fixtures

1 is insufficient, standing alone, to fairly put defendants on notice that fixtures are included as
2 target products.

3 We find, however, that it is defendant who is overreaching with respect to the
4 *Carpanelli* complaint. In the *Carpanelli* complaint, the targets of the alleged conspiracy are
5 described more than twenty times as 'plumbing fixtures and fittings'. Plaintiff Carpanelli is
6 described as an indirect purchaser of 'plumbing fixtures and fittings'. Furthermore, the class
7 definition encompasses "all persons or entities in the state of California who indirectly
8 purchased plumbing fixtures and fittings products." *Carpanelli*, ¶ 23.

9 Defendant argues that inferences can be drawn from sources outside of the *Carpanelli*
10 complaint as well as from the complaint itself that would logically lead one to conclude that,
11 despite what it says, the complaint actually encompassed only an alleged fittings conspiracy.
12 For instance, defendant argues that the complaint should be read in conjunction with the
13 other four original complaints - which allege clearly only fittings conspiracies.

14 We disagree with the emphasis that defendant places on outside materials. The best
15 and most reliable way to ascertain the scope of the *Carpanelli* complaint is by reviewing the
16 complaint itself. It also strikes us as a dubious proposition that a complaint filed by one
17 plaintiff represented by a particular lawyer in a certain court should be interpreted in
18 conjunction with other complaints filed by other plaintiffs with different representation in
19 another court.

20 Defendant next argues that the fact that Grohe America (a manufacturer of fittings but
21 not fixtures who is named as a defendant in the *Carpanelli* complaint) was omitted from the
22 CAC demonstrates that the *Carpanelli* complaint originally targeted only manufacturers of
23 fittings (and therefore only alleged a fittings conspiracy). We agree that this theory could
24 offer one explanation for the removal of Grohe from the CAC. Defendant has not persuaded
25 us, however, that this is the only explanation for Grohe's removal -- or even the most likely.

26 After considering all of defendant's arguments, we must acknowledge that we do not
27 believe that defendant's reading of the *Carpanelli* complaint is completely irrational. Some
28

7

of the more subtle inferences drawn by defendant <u>do</u> support a reading of the complaint as targeting only fittings. That being said, we cannot find that a complaint that explicitly asserts that the conspiracy reached fixtures and fittings, that refers to fixtures and fittings more than twenty times, that includes indirect purchasers of fixtures in the class definition, and that defines fixtures in one section of the complaint as including sinks, bathtubs, and toilets, did not put defendant on notice that fixtures were included in the scope of the alleged conspiracy. If defendant believed that the complaint's description of the scope of the conspiracy was ambiguous, it should (and presumably would) have promptly requested clarification -- either informally or through motion practice in state court, where the case was pending. But defendant did neither -- over a period of many months.

Accordingly, we find that the *Carpanelli* complaint included sufficient references to plumbing fixtures to adequately place defendant on notice that fixtures were included within the scope of the alleged conspiracy. We therefore find that the CAC did not substantively alter the nature of the *Carpanelli* action - and thus relates back to February 15, 2005 -- when the *Carpanelli* complaint was filed.

At the hearing, defense counsel argued that it was unfair to find that the entire CAC - which encompasses the former *Lang*, *Young*, and *Linn* complaints as well as the *Carpanelli* complaint, relates back when only *Carpanelli* included fixtures in the scope of the conspiracy.[10] Defense counsel also appeared to argue more broadly that it was unfair to combine *Carpanelli*, a fittings and fixtures case, with the other three fittings cases.

Defendant, however, provides us with no authority (nor have we independently been able to locate any) for the proposition that we can either ignore the *Carpanelli* complaint or somehow unhinge that complaint from the three other complaints merged in the CAC.

---

[10] We do not mean to suggest that counsel conceded - at any point - that the *Carpenelli* complaint includes an alleged fixture conspiracy. Rather, the merger argument discussed above was an alternative argument offered by defense counsel when it became clear that the Court believed that *Carpanelli* is fairly read as encompassing fixtures as well as fittings.

1 The problem with defendant's position is that the decisions it really challenges are decisions made at the state court level -- that is, the decision made by the California Judicial Council, under applicable state law, to coordinate the original five actions and the decision made by Judge Kramer, also under applicable state law, to permit plaintiffs to merge their complaints into a consolidated complaint.  If defendant wants to make the argument that it is not fair to consolidate *Carpanelli* with the other complaints, we believe that the place to make that argument is state court - not here.

Defendant removed the CAC as a whole -- and we will accordingly treat it as such.  Any other decision on our part would, in essence, second-guess the actions taken by the Judicial Council and by Judge Kramer.

To reiterate, we find that the CAC did not substantively alter the nature of the *Carpanelli* action - and thus relates back to February 15, 2005 -- when the *Carpanelli* complaint was filed.  This date was before the effective date of the CAFA - and therefore the case was not removable under CAFA.  Accordingly, we must GRANT plaintiffs' motion to remand the case to state court.

III.   Attorneys Fees

The final issue we must resolve is whether plaintiffs are entitled to an award of attorneys fees in connection with defendant's removal of this case to federal court.  The Supreme Court recently set forth the standard for awarding fees when a federal court remands a case to state court. "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal."  Martin v. Franklin Capital Corporation, 126 S.Ct. 704, 711 (2005).

Defendant argues that it had an objectively reasonable basis for seeking removal, and that the Court should therefore decline to award fees.  Given that the law of removal under the CAFA is in its developmental stages, and that, as plaintiff concedes, "**this case presents a unique situation**, in that none of the cases dealing with this issue involved four individual complaints being consolidated into one", see Plaintiff's Reply Brief, p. 9, we do not believe

1  it is accurate to characterize defendant's removal as lacking an 'objectively reasonable basis'.
2  Accordingly, we DECLINE to award attorneys fees to plaintiffs.
3     IT IS SO ORDERED.
4  Dated:  March 3, 2006                                          _____
5                                                                  WAYNE D. BRAZIL
                                                                    United States Magistrate Judge
6
7  Copies to:
   All parties, WDB, stats